# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00346-CR

**Luke Anthony Looschen, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
### NO. 09-1191-K368, HONORABLE BURT CARNES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Luke Anthony Looschen pleaded guilty to four counts of intoxication manslaughter and two counts of intoxication assault relating to an automobile accident. He also pleaded true to the allegation that he used a deadly weapon when committing these offenses. After a bench trial on punishment, the trial court assessed punishment at twenty years in prison for each of the manslaughter counts and ten years in prison for each of the assault counts. The trial court ruled that Looschen would serve three pairs of sentences concurrently, with each pair running consecutively to the other, resulting in two consecutive twenty-year terms followed by a ten-year term. By his sole issue on appeal, Looschen contends that the trial court committed fundamental error by permitting a doctor to testify about the results of a blood-alcohol test to prove an extraneous offense. We will affirm the judgment.

## BACKGROUND

The bulk of the State's evidence concerned the August 2009 automobile accident at issue in this case and its effect on the victims and their survivors. The evidence showed that Looschen's vehicle crossed the center stripe of a highway and struck a van carrying seven members of a family. Four were killed, and one of the surviving children was injured so severely that family members were initially told she might not live. There was testimony that Looschen smelled of alcohol, had red, glassy eyes, and slurred his speech. He admitted at the scene to having drunk one beer, but later recalled drinking perhaps eight. Witnesses testified that immediately after the accident Looschen threw beer bottles and cans out of the cab of his truck. According to the state trooper responding to the accident, Looschen did not even know what road he was on. A trooper performed the horizontal gaze nystagmus test for intoxication and found six out of six possible clues indicating intoxication. There was testimony that Looschen was overheard at the scene telling someone on the telephone that he had had "another accident."

A defense witness spoke about Looschen's drinking generally and a one-vehicle rollover accident Looschen had in July 2009, three weeks before the accident at issue here. Witnesses described him as a good person who had a problem with alcohol. One witness testified that, after the July 2009 accident, Looschen's friends spoke to him about his drinking.

Appellant testified that the August 2009 accident at issue here was "horrific" and that he was "profoundly remorseful." He testified that his July 2009 accident was caused by inattention, not intoxication. He also disputed that he had been arrested for driving under the influence in 1982, but conceded that he was issued a citation for driving under the influence and that his license was suspended.

2

The testimony Looschen challenges on appeal came from an orthopedic surgeon who had examined Looschen immediately after the July 2009 wreck. The doctor noted that Looschen was extremely agitated at times, was difficult to communicate with, and emitted a strong odor of alcohol. Looschen denied drinking that night, but a blood-alcohol test taken by another person at the hospital revealed that he had a .113 alcohol concentration.[1] The doctor testified that, based on his observations, he had expected that Looschen's blood-alcohol level would have tested higher. Looschen cross-examined the doctor regarding his lack of knowledge of who drew the blood for the test and how they did so, but did not object to the admission of this evidence at the punishment hearing. The doctor testified that he believed Looschen was intoxicated irrespective of the test results.

The court assessed the maximum term of imprisonment available for each offense.[2] Looschen then filed a motion for a new punishment trial contending that the sentence was too high. He offered additional evidence regarding his medical conditions, including brain damage that predated the accident and allegedly affected his visual perception abilities. He argued that consideration of this new evidence would warrant reduction of his sentence. The trial court denied the motion.

---

[1] A person is deemed intoxicated with an alcohol concentration of 0.08. Tex. Penal Code Ann. § 49.01 (West 2011).

[2] *See* Tex. Penal Code Ann. §§ 12.33 (second-degree felony punishment 2-20 years in prison), 12.34 (third-degree felony punishment 2-10 years in prison), 49.07(c) (intoxication assault is typically a third-degree felony), 49.08 (intoxication manslaughter is typically a second-degree felony) (West 2011). The maximum potential imprisonment running all terms consecutively was 100 years. The court's decision to run half of the sentences concurrently reduced Looschen's sentence to 50 years.

**ANALYSIS**

Looschen contends on appeal that the trial court's admission of the doctor's testimony regarding the blood-alcohol test taken after the July 2009 accident was fundamental error that requires reversal of his sentencing. He argues that the doctor's testimony was inadmissible hearsay because the doctor did not perform the test and could not verify the chain of custody. He contends that the doctor's testimony was unreliable, and that the State's use of the testimony to examine witnesses and to argue for a tough sentence exacerbated the problems attendant to its wrongful admission. He also contends that one of the State's witnesses relied on the July blood-alcohol evidence when testifying that Looschen's decision to drive while intoxicated three weeks after the July accident was "as close to wanting to kill somebody as you can get."

Admission of evidence without an objection can be grounds for reversal only if its admission constitutes fundamental error. *See* Tex. R. Evid. 103; *see also* Tex. R. App. P. 33.1(a). The only categories of errors that do not require an objection to be preserved for appellate review are denials of absolute systemic requirements and violations of rights that must be expressly waived. *Aldrich v. State*, 104 S.W.3d 890, 895 (Tex. Crim. App. 2003). Absolute systemic requirements that may not be waived include jurisdiction over the person and the subject matter. *Id.* Rights that must be preserved unless expressly waived include the right to the assistance of counsel, the right to a trial by jury, and the right of appointed counsel to have ten days of trial preparation. *Id.*

The court of criminal appeals has expressly rejected the argument that the admission of hearsay evidence is fundamental error. *Moore v. State*, 935 S.W.2d 124, 130 (Tex. Crim. App. 1996). Instead, the admission of inadmissible hearsay is non-constitutional error. *Lopez v. State*, 200 S.W.3d 246, 255 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). Looschen argues that

4

this case should be treated differently because of the emphasis placed on the hearsay evidence by other witnesses and the prosecution's argument. We are not persuaded that the facts of this case support the requested distinction and expansion of the exception to the preservation requirement, particularly because this was a bench trial.[3] We believe that the trial court could fairly consider the reliability of the test-results evidence and assess its relevance to the punishment issue in this case in light of all of the evidence.

Finally, even if the admission of the evidence were somehow fundamental error, Looschen has to show that it was harmful error. Fundamental errors, even those implicating constitutional provisions, can still be subject to a harm analysis. *See Ruiz v. State*, 272 S.W.3d 819, 824 (Tex. App.—Austin 2008, no pet.). Only "structural errors"—those that affect the entire conduct of the trial from beginning to end or the framework within which the trial proceeds rather than simply being an error in the trial process itself—escape a harm analysis. *See id.* (citing *Johnson v. State*, 169 S.W.3d 223, 237 (Tex. Crim. App. 2005) (citing *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991)). The admission of the test results concerning the extraneous offense was not structural error, and Looschen must, therefore, show that the evidence affected his substantial rights. *See* Tex. R. App. P. 44.2.

The test results were not harmful to Looschen for several reasons. First, they were not the only evidence that he was intoxicated during the previous accident in July 2009. The examining

---

[3] Although we no longer presume that a trial court will disregard inadmissible evidence when a case is tried to a judge rather than to a jury, the danger that the trier of fact will consider extraneous-offense evidence for anything other than the limited purpose for which it is admitted is reduced, and the likelihood that the extraneous-offense evidence will unfairly prejudice the defendant is diminished. *Corley v. State*, 987 S.W.2d 615, 621 (Tex. App.—Austin 1999, no pet.).

physician said he believed that Looschen was intoxicated during that accident irrespective of the test results. Other witnesses indicated their belief that Looschen was intoxicated at the time of the July crash. There was also testimony that he had been confronted about the dangers of his alcohol use after the July 2009 accident—less than three weeks before this accident. What is most important is that the test results concerned only an extraneous offense. Looschen pleaded guilty to four counts of intoxication manslaughter and two counts of intoxication assault, so the only issue was the length of the sentence. The testimonial and photographic evidence admitted at the punishment phase, combined with the tragic loss of four lives and severe injuries to others, was compelling regarding the nature of the accident and the crimes. We conclude that the blood-test evidence concerning Looschen's July wreck did not affect his substantial rights during the punishment phase of this trial. Even if the admission of the evidence in the absence of objection was fundamental error that survived the lack of preservation, we conclude that its admission was harmless.

We affirm the judgment.

_____

Jeff Rose, Justice

Before Justices Puryear, Rose and Goodwin

Filed: December 29, 2011

Affirmed

Do Not Publish

6